IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PEDRO REYES | : |
| Plaintiff | : |
| vs. | : CIVIL ACTION NO. 10-3102 |
| MARK DILUZIO | : |
| Defendant | : |

Henry S. Perkin, M.J.                                                                                      September 21, 2011

**MEMORANDUM**

        In his Complaint, plaintiff, Pedro Reyes ("Reyes"), avers claims of false arrest against defendant, Mark DiLuzio ("Lt. DiLuzio"), alleging that Lt. DiLuzio had no probable cause to believe that Reyes drove a car under the influence of alcohol or was in possession of an open container of alcohol while driving. Reyes also avers a claim of malicious prosecution against Lt. DiLuzio, alleging that Lt. DiLuzio initiated criminal proceedings against him despite the complete absence of probable cause. Presently before this Court is the Motion for Summary Judgment Pursuant to Fed. R.C.P. 56 of Defendant Lieutenant Mark DiLuzio. For the reasons that follow, defendant's motion will be granted.

**Facts**

        Based upon the record papers, exhibits, depositions, and the parties' statements of the facts, the pertinent facts to this Court's determination are as follows:

        During the early morning of July 6, 2008, Lt. DiLuzio was working a DUI checkpoint in the 800 block of Stefko Boulevard in Bethlehem, Pennsylvania with his fellow

officers from the City of Bethlehem Police Department, including Officer Doug Nothstein ("Officer Nothstein"). On his way home from a dinner party,[1] Reyes encountered the DUI checkpoint and was initially assessed by Officer Nothstein who was the contact officer at the checkpoint. As contact officer, it was Officer Nothstein's responsibility to make initial contact with the driver of any vehicle that came through the checkpoint, and make observations of the driver.

When Reyes entered the DUI checkpoint, he rolled his window down, and Officer Nothstein noticed an open container of alcohol in the vehicle.[2] Officer Nothstein further observed that Reyes had glassy, bloodshot eyes, slurred his speech slightly, and was sluggish in his movements. Officer Nothstein also detected an odor of alcohol on Reyes's breath. Reyes admitted to Officer Nothstein that he had been drinking that night. After making these observations, and having been advised by Reyes that he had been drinking, Officer Nothstein directed Reyes to step out of the vehicle. Officer Nothstein then escorted Reyes over to Lt. DiLuzio. Officer Nothstein briefed Lt. DiLuzio on his observations of Reyes, including the open container of alcohol found in the vehicle and Reyes's admission that he had been drinking.

Lt. DiLuzio's responsibilities at the DUI checkpoint were to conduct field sobriety testing on those drivers that were removed from their vehicle. Lt. DiLuzio engaged Reyes in conversation, requested his driver's license, and noticed that Reyes's eyes appeared red and glassy, like he had been drinking. Reyes admitted to Lt. DiLuzio that he had been drinking that

---

[1] On the evening of July 5, 2008, Reyes was a guest for dinner at the home of the daughter of his long-time girlfriend. He arrived at the dinner party at approximately 3:00 p.m. and left at approximately 11:00 p.m. Reyes has admitted that he consumed approximately two beers while he was at the dinner party.

[2] The car that Reyes was driving belonged to his long-time girlfriend. He did not have any passengers in the vehicle.

2

night and Lt. DiLuzio detected an odor of alcoholic beverage emanating from Reyes. Based on his observations of Reyes, Reyes's admission, and the open container in the vehicle, Lt. DiLuzio decided to conduct a preliminary breath test ("PBT") and standard field sobriety testing upon Reyes, to which Reyes agreed.

Lt. DiLuzio took two readings on the PBT with the results reflecting bold alcohol content of .09 and .10, respectively. The results were not shown to Reyes. Lt. DiLuzio then asked Reyes to conduct the walk and turn and the one legged stand field sobriety tests. Having learned that Reyes suffered from a back disability, Lt. DiLuzio first demonstrated each of the tests and asked Reyes if he was capable of performing each test. Reyes responded that he was capable of performing each test. Upon execution, however, Reyes failed both tests. As a result of his observations, and Reyes's performance on the PBT and field testing, Lt. DiLuzio took Reyes into custody on suspicion of driving under the influence[3] and Reyes was transported to the Northampton County DUI Center ("DUI Center") for blood testing.

---

[3] Section 3802 of the Pennsylvania code provides, in pertinent part, as follows:

> § 3802. Driving under influence of alcohol or controlled substance.
>
> (a) General impairment.
>
> > (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>
> > (2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802 (2011).

Upon arrival at the DUI Center, Officer Schaedel, a DUI Center employee, observed that Reyes had a moderate odor of alcoholic beverage, mumbled speech, glassy, bloodshot eyes, and a sluggish balance. Officer Schaedel, similar to the conclusions of Officer Nothstein and Lt. DiLuzio, determined that Reyes was unfit in his ability to drive in a safe manner. At the DUI Center, Reyes voluntarily gave a blood sample, which was sent to a hospital for testing. When the results of the blood testing were provided to Lt. DiLuzio, they reflected that Reyes's blood was negative for alcohol content. Lt. DiLuzio did not pursue DUI charges against Reyes; rather he mailed him a summary citation for having an open container while driving in violation of 75 Pa. C.S.A. § 3809.[4] A hearing on the open container charge was subsequently held before a Magisterial District Justice who found Reyes not guilty of the traffic violation, noting that Reyes "got a break."

---

[4]  Section 3809 of the Pennsylvania code provides as follows:

> § 3809.  Restriction on alcoholic beverages.
>
> (a)  General rule. --Except as set forth in subsection (b), an individual who is an operator or an occupant in a motor vehicle may not be in possession of an open alcoholic beverage container or consume a controlled substance as defined in the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or an alcoholic beverage in a motor vehicle while the motor vehicle is located on a highway in this Commonwealth.
>
> (b)  Exception. --This section does not prohibit possession or consumption by any of the following:
>
>> (1) A passenger in the passenger area of a motor vehicle designed, maintained or used primarily for the lawful transportation of persons for compensation. This paragraph includes buses, taxis and limousines.
>>
>> (2) An individual in the living quarters of a house coach or house trailer.
>
> (c)  Penalty. --An individual who violates this section commits a summary offense.

75 Pa.C.S. § 3809 (2011).

**Standard of Review**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Anderson, 477 U.S. at 249.  A factual dispute is material only if it might affect the outcome of the suit under governing law.  Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325).  The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim.  Celotex, 477 U.S. at 322-323.  If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper.  Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).  When the non-moving

party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

### Discussion

Reyes brought this action under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[5] Barna v. City of Perth Amboy, 42 F.3d 809, 815 (3d Cir.1994) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). As indicated above, Reyes alleges a violation of his rights under the United States Constitution, claiming that his DUI arrest and subsequent prosecution occurred without probable cause.

### Unlawful Arrest Claim

Claims of unlawful arrest require a plaintiff to show that he was arrested without probable cause. Groman v. Twp. of Manalapan, 47 F.3d 628, 634-35 (3d Cir. 1995); see also Berg v. County of Allegheny, 219 F.3d 261, 268-269 (3d Cir. 2000). Probable cause to arrest requires "proof of facts and circumstances that would convince a reasonable, honest" officer that

---

[5] Defendant apparently does not dispute that, during the alleged incident, Lt. DiLuzio was "acting under color of state law."

the person arrested has committed a crime.  Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993); see United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).  Thus, the issue is not whether an individual actually committed the crimes for which he was arrested, but whether the police had probable cause to believe that the individual committed those crimes at the time of his arrest.  Groman, 47 F.3d at 634; see also Baker v. McCollan, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted - indeed, for every suspect released.").

       The test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest."  Barna, 42 F.3d at 819 (quoting Beck v. Ohio, 379 U.S. 89, 96 (1964); Edwards v. City of Philadelphia, 860 F.2d 568, 571 n.2 (3d Cir. 1988)).  Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law.  Id. (quoting Henry v. United States, 361 U.S. 98, 102 (1959)).  Therefore, as long as Lt. DiLuzio had some reasonable basis to believe Reyes had committed a crime, the arrest is justified as being based on probable cause.  Probable cause need only exist as to any offense that could be charged under the circumstances.  Id. (quoting Edwards, 860 F.2d at 575-576).

       At the time of Reyes's arrest, Lt. DiLuzio knew that: (1) Officer Nothstein had suspicions based upon his own observation of Reyes that Reyes was driving under the influence; (2) Reyes's eyes appeared red and glassy, like he had been drinking; (3) Reyes admitted to Lt. DiLuzio that he had been drinking that night; (4) Lt. DiLuzio detected an odor of alcoholic beverage emanating from Reyes; (5) an open container of alcohol had been found in the vehicle that Reyes was operating; (6) two readings on the PBT reflected alcohol content of .09 and .10,

respectively; and (7) Reyes failed the walk and turn and one legged stand field sobriety tests. We find that the foregoing information provided sufficient probable cause for Lt. DiLuzio to arrest Reyes for driving under the influence; there were ample facts and circumstances to allow Lt. DiLuzio to reasonably conclude that Reyes was intoxicated and should be taken into custody for DUI. Because Reyes has submitted no evidence to show that Lt. DiLuzio's conduct in initiating an arrest under the DUI statute would have been unreasonable,[6] Reyes's arrest occurred with probable cause as a matter of law, and there was no violation of Reyes's Fourth Amendment rights on this ground. Accordingly, Lt. DiLuzio's motion for summary judgment with respect to this claim will be granted.

---

[6] In fact, Reyes concedes that the evidence cited by Lt. DiLuzio in this matter, if believed, would support an arrest in this case. See Pl. Br. at 8. Reyes argues, however, that Lt. DiLuzio should not be believed. Reyes alleges that the "problem with granting the relief sought in [Lt. DiLuzio]'s motion is that a fact-finder is not required to believe [Lt. DiLuzio]'s testimony in this regard." See Pl. Br. at 9. Plaintiff contends that the video taken of him at the DUI Center, the subsequent negative results of the blood test, and his own testimony all call into question the veracity of Lt. DiLuzio's claims and preclude summary judgment in his favor. We disagree.

As correctly noted by defendant in his reply, an assertion that the testimony is not worthy of belief is not the standard for summary judgment. Rather, "once the party moving for summary judgment has satisfied its burden by showing that there are no genuine disputes as to any material facts, the non-movant must provide evidence to support each element on which it bears the burden of proof." See Def. Reply Br. at 1. Plaintiff has not submitted any evidence to contradict the testimony of what Lt. DuiLuzio, and other officers, reasonably believed. Reyes provides no evidence to dispute that he had been drinking that night (a fact that Reyes actually admitted), had glassy and bloodshot eyes, or had an odor of an alcoholic beverage emanating from his person. Moreover, we note that Reyes has provided no evidence in opposition to the open container found in the vehicle he was operating or to the failed PBT and field sobriety tests.

To the extent that Reyes is relying on the videotape depicting his actions at the DUI Center following his arrest, we note that Reyes did not provide this Court with a copy of the videotape. Nevertheless, we determine that the videotape would likely not set forth a genuine issue of material fact to overcome summary judgment in favor of Lt. DiLuzio. As noted above, the test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest." Barna, 42 F.3d at 819 (quoting Beck, 379 U.S. at 96; Edwards, 860 F.2d at 571 n.2). We cannot foresee how a video, taken some time after the arrest, would be relevant to or alter our decision with respect to observations and conclusions of at least two officers at the moment of Reyes's arrest.

<u>Malicious Prosecution Claim</u>

To prevail on a claim of malicious prosecution brought under § 1983 for violation of Fourth amendment rights, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. <u>Johnson v. Knorr</u>, 477 F.3d 75, 82 (3d Cir. 2007). This Court's conclusion that Lt. DiLuzio possessed probable cause to effect Reyes's arrest forecloses the malicious prosecution claim as a matter of law. <u>Amato v. Pennsylvania Office of AG</u>, 183 F. Appx. 260, 262 n.1 (3d Cir. 2006) ("[I]f probable cause is established, a malicious prosecution claim fails as a matter of law.") Accordingly, Lt. DiLuzio's motion for summary judgment with respect to this claim will be granted.

An Order follows.